

FILED & ENTERED

JUL 30 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Bruce Dwain Copeland,<br>           Debtor. | Case No.:   2:05-bk-11844-ER<br>Chapter:    7<br><br>**MEMORANDUM OF DECISION DENYING THIRD MOTION TO REOPEN**<br><br>[No hearing required pursuant to Federal Rule of Civil Procedure 78(b) and Local Bankruptcy Rule 9013-1(j)(3)] |

    For the third time, Bruce Dwain Copeland ("Copeland") moves to reopen his Chapter 7 bankruptcy case (the "Third Motion to Reopen").[1] Copeland seeks to reopen the case so that he can attempt to invalidate a lien securing post-petition financing that Copeland obtained before his case was converted from Chapter 11 to Chapter 7.

    Pursuant to Civil Rule 78(b) and LBR 9013-1(j)(3),[2] the Court finds this matter to be suitable for disposition without oral argument. Copeland's Third Motion to Reopen, like the first and second Motions to Reopen that preceded it, is without merit and is **DENIED** for the reasons set forth herein.

---

[1] Doc. Nos. 356–57. (Unless otherwise indicated, all "Doc. No." citations are to the docket in Case No. 2:05-bk-11844-ER.)

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

## I. Background

Copeland filed a voluntary Chapter 11 petition on January 31, 2005 (the "Petition Date"), proceeding *in pro per*. Shortly after filing the petition, Copeland realized that he needed counsel to fulfill his obligations as a Chapter 11 debtor-in-possession.[3] On April 14, 2005, the Court approved Copeland's application to retain Levene, Neale, Bender, Yoo & Brill LLP ("LNBYB")[4] as his general bankruptcy counsel.[5]

As of the Petition Date, Copeland's primary residence was located at 1541 W. 218th Street, Torrance, CA 90501 (the "Property").[6] On October 11, 2005, the Court authorized Copeland to obtaining postpetition financing by refinancing the Property. *See* Doc. No. 91 (the "Financing Order"). In support of the motion to obtain the post-petition financing, Copeland filed a declaration stating "I have agreed that all proceeds from the loan will be transferred directly to [LNBYB], to be held in trust pending further order of this Court."[7] The Financing Order provided that "[a]ll proceeds from the refinancing of the Property, after payment of allowed secured claims (excluding any purported judgment liens), shall be transferred to Debtor's counsel to be held by counsel in a segregated trust account pending further order of this Court."[8]

Refinancing of the Property could not be completed immediately after entry of the Financing Order because Copeland was required to engage in extensive litigation to invalidate liens against the Property asserted by two creditors.[9] The refinancing was completed in May 2006, and the net proceeds of the refinancing, in the approximate amount of $231,000, were deposited in LNBYB's trust account.[10]

On August 17, 2006, the Court approved a stipulation between Copeland and the United States Trustee (the "UST"), which provided that the case would be converted to Chapter 7 if

---

[3] *See* Declaration of Bruce D. Copeland in Support of Motion by Debtor and Debtor in Possession to Further Extend the Time to Assume or Reject Non-Residential Real Property Lease [Doc. No. 75] at ¶ 4 ("I commenced the instant case *in pro per*. Shortly after commencement of the case, I was faced with the daunting task of being required to prepare and file complicated documents and pleadings with the Court and the Office of the United States Trustee. I also learned the complexities involved in administering a Chapter 11 case as a debtor in possession. I therefore determined that I must obtain competent bankruptcy counsel in order to assist me in the administration of this case and my reorganization efforts.").

[4] At the time Copeland retained LNBYB, the name of the firm was "Levene, Neale, Bender, Rankin & Brill LLP." For ease of reference, the Court uses the firm's current name.

[5] Doc. No. 49-1.

[6] *See* Doc. No. 76 (Chapter 11 Status Report providing background information on Copeland).

[7] *See* Declaration of Bruce Dwain Copeland at ¶ 8 [Doc. No. 86].

[8] Financing Order at ¶ 3.

[9] *See* Doc. No. 151 at ¶¶ F–G (Chapter 11 Status Report describing the reasons for the delays in the refinancing).

[10] *See* First and Final Application of [LNBYB] for Approval of Fees and Reimbursement of Expenses [Doc. No. 187] (the "Application") at § II.A.8 (describing the refinancing). The Application states that "the Debtor refinanced the Property and the proceeds of the refinance, in the approximate amount of $231,000, were deposited in [LNBYB's] trust account." *Id.* The Application is supported by a declaration from David B. Golubchik, the attorney at LNBYB primarily responsible for Copeland's case, which attests that "all of the matters stated in the Application are true and correct." Golubchik Decl. at ¶ 3.

Copeland failed to file tax returns and monthly operating reports on or before September 25, 2006.[11] On October 4, 2006, upon receipt of a declaration from the UST attesting that the Debtor had failed to timely file the required documents,[12] the Court converted the case to Chapter 7.[13]

On October 5, 2006, Timothy Yoo was appointed as the Chapter 7 Trustee (the "Trustee").[14] On July 16, 2009, Yoo filed a Trustee's Final Report (the "TFR"), which was signed under penalty of perjury.[15] The TFR stated that the "Trustee received funds from refinance of property received during Chapter 11."[16] Specifically, the Trustee received $212,152.86 from LNBYB's trust account, which the *Estate Cash Receipts and Disbursements Record* describes as the "balance of proceeds from refinance of residence and payment of post-petition fees of Debtor's counsel [($252,000 (refinance of property) - $40,000 (fees)]."[17]

On July 29, 2010, Yoo file a *Chapter 7 Trustee's Final Account and Distribution Report; Certification that the Estate Has Been Fully Administered; and Application to be Discharged* (the "Final Account"),[18] which was signed under penalty of perjury. The Final Account stated that "[a]ll funds on hand have been distributed in accordance with the [TFR],"[19] and contained a detailed final accounting of the manner in which the estate's cash—including the proceeds from the refinancing of the Property—had been distributed. As set forth in the Final Account, the Trustee paid $1,033,902.48 to secured creditors, $132,175.69 to Chapter 7 administrative creditors, and $128,639.87 to Chapter 11 administrative creditors.[20] No dividend was paid to unsecured creditors.[21] On February 17, 2011, the case was closed.[22]

On February 8, 2016, the Court denied Copeland's first Motion to Reopen the case.[23] Copeland sought reopening to pursue litigation against LNBYB for allegedly forging Copeland's signature on a declaration in support of a fee application. The Court found that reopening the case would be futile because Copeland's claims against LNBYB were barred by the statute of limitations and the doctrine of claim preclusion.[24]

On March 2, 2016, the Court denied Copeland's motion for reconsideration of the order denying the first Motion to Reopen.[25] Copeland's appeal of the denial of the motion for reconsideration was dismissed because it was not timely filed.[26]

---

[11] Doc. No. 174.
[12] Doc. No. 179.
[13] Doc. No. 181.
[14] Doc. No. 185.
[15] Doc. No. 285.
[16] TFR at 5. (Page citations are to the ECF pagination.)
[17] *Id.* at 7.
[18] Doc. No. 294.
[19] Final Account at 1.
[20] *Id.* at 2.
[21] *Id.*
[22] Doc. No. 295.
[23] Doc. No. 319.
[24] *See* Doc. No. 317 (ruling denying Copeland's first Motion to Reopen as futile) and Doc. No. 64 [Adv. No. 2:15-ap-01351-ER] (ruling that Copeland's claims against LNBYB were barred by the statute of limitations and the doctrine of claim preclusion).
[25] Doc. No. 328.
[26] Doc. No. 337.

On October 13, 2016, the Court denied Copeland's second Motion to Reopen the case.[27] The Court noted that the second Motion to Reopen presented no new arguments or evidence, and appeared to be an attempt by Copeland to circumvent his failure to timely appeal either the order denying his first Motion to Reopen or the order declining to reconsider that denial.[28]

On July 3, 2017, the Ninth Circuit Bankruptcy Appellate Panel (the "BAP") affirmed the Court's denial of Copeland's Motions to Reopen, reasoning as follows:

> Ordinarily, it is inappropriate to consider the merits of an underlying claim when ruling on a motion to reopen. *See [Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 913 (9th Cir. BAP 1999)]. A "motion to reopen legitimately presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee. Extraneous issues should be excluded." *Id.* at 916-17. *See also In re Staffer*, 306 F.3d at 972 (holding that whether the potential defendant has an affirmative defense is an extraneous issue in the context of a motion to reopen for purposes of filing a nondischargeability action, citing *Menk*).
>
> Here, the bankruptcy court denied the motion to reopen on grounds of futility because it had previously found the forgery claim was barred under the applicable statute of limitations and claim preclusion. The bankruptcy court's ruling thus initially appears to be contrary to the rule articulated in *Menk* and *Staffer*. However, when the undisputed facts in the record unequivocally establish that reopening the case would be a "pointless exercise," the bankruptcy court may deny the motion to reopen on that basis. *See, e.g., Beezley v. Cal. Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1437 (9th Cir. 1993).
>
> Based on our review of the record, we find no abuse of discretion in the bankruptcy court's denial of the motion to reopen. Copeland's claims based on his allegation that the 11/17/06 Declaration [the declaration in support of the fee application] was forged were dismissed by every tribunal that considered them—one state court, two federal district courts, and the bankruptcy court. The bankruptcy court dismissed those claims with prejudice. As such, it would have been pointless for the bankruptcy court to grant Copeland's motion to reopen to pursue those claims yet again.

Memorandum [Doc. No. 352] at 7–8.

## II. Copeland's Third Motion to Reopen

In his Third Motion to Reopen, Copeland alleges that the loan proceedings authorized by the Financing Order "were never given to either Kim Copeland or Bruce Copeland the Debtor in Possession."[29] He further asserts that the "loan violated the order to grant Bruce Copeland post-petition financing" and alleges that the "disappearance of the proceeds violates Chapter 11 Debtor-in-possession rules and the Court should void the loan."[30] Copeland seeks to reopen the case so that he can seek to invalidate the Deed of Trust that was recorded against the Property to secure the credit authorized by the Financing Order.

---

[27] Doc. No. 341.
[28] *Id.* at 4.
[29] Doc. No. 356 at 4.
[30] *Id.*

## III. Discussion

Section 350(b) provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." In determining whether a case should be reopened, the Court must consider "whether further administration appears to be warranted" and "whether a trustee should be appointed." *Lopez v. Specialty Restaurants Corp. (In re Lopez)*, 283 B.R. 22, 26 (B.A.P. 9th Cir. 2002). A case must be reopened "where 'assets of such probability, administrability, and substance' appear to exist 'as to make it unreasonable under all the circumstances for the court not to deal with them.' A motion to reopen can be denied, however, where the chance of any substantial recovery for creditors appears 'too remote to make the effort worth the risk.'" *Id.* at 27 (internal citations omitted).

In *Cortez v. American Wheel (In re Cortez)*, 191 B.R. 174, 179 (B.A.P. 9th Cir. 1995), the court found that it was appropriate to deny a motion to reopen where there was no legal basis for granting the relief sought by the debtors. In *Cortez*, the debtors sought to reopen their Chapter 7 case to avoid a creditor's lien and to enjoin the creditor's foreclosure action. *Id.* at 176. Examining the facts of the case, the *Cortez* court found that the debtors would not be able to avoid the creditor's lien or to enjoin the foreclosure action. *Id.* at 177–79. Given the debtors' inability to obtain the relief they were seeking, the court upheld denial of the motion to reopen. *Id.* at 179.

As the BAP observed in the Memorandum affirming the Court's denial of Copeland's prior Motions to Reopen, it is ordinarily "inappropriate to consider the merits of an underlying claim when ruling on a motion to reopen."[31] The BAP further explained, however, that "when the undisputed facts in the record unequivocally establish that reopening the case would be a 'pointless exercise,' the bankruptcy court may deny the motion to reopen on that basis."[32]

Here, the record clearly demonstrates that Copeland's allegation that the refinancing proceeds somehow disappeared are wholly without merit. Accordingly, it would be a pointless exercise to reopen the case to permit Copeland to attempt to avoid the Deed of Trust that was recorded against the Property to secure the credit authorized by the Financing Order.

As discussed in detail in Section I, the refinancing proceeds were initially deposited into LNBYB's trust account. When the case was converted to Chapter 7, the proceeds were turned over to the Trustee. The proceeds were ultimately distributed to secured creditors and administrative creditors.

The disposition of the refinancing proceeds has been attested to by numerous sworn declarations. In addition, upon conversion of the case to Chapter 7, the Trustee's custody over the refinancing proceeds was supervised by the UST. *See generally* 28 U.S.C. § 586 (requiring the UST to supervise Chapter 7 Trustees and to supervise the administration of cases under Chapter 7). The record shows that the refinancing proceeds were distributed in a manner that was consistent with the orders of the Court and the distribution priorities set forth in § 726. Copeland's conclusory declaration, which attests without any corroborating evidence that the refinancing proceeds "disappeared," cannot overcome this clear record to the contrary.

//
//
//

---

[31] Memorandum at 7.
[32] *Id.* at 8.

## IV. Conclusion

Based upon the foregoing, Copeland's Third Motion to Reopen is **DENIED**. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: July 30, 2021

Ernest M. Robles
United States Bankruptcy Judge